# In re Christopher John DILLINGHAM, Respondent

File A28 992 806 - Portland

*Decided August 20, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The expungement of an alien's foreign drug-related conviction pursuant to a foreign rehabilitation statute is not effective to prevent a finding of his inadmissibility pursuant to section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1994), even if he would have been eligible for federal first offender treatment under the provisions of 18 U.S.C. § 3607(a) (1994) had he been prosecuted in the United States. *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), distinguished.

FOR THE RESPONDENT: Jimmy W. Go, Esquire

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Thomas L. Day, District Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

DUNNE, Vice Chairman:

In a decision dated June 13, 1996, the Immigration Judge found the respondent deportable on his own admissions under section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B)(1994), and denied his applications for adjustment of status and voluntary departure.[1] The Immigration Judge concluded that the respondent was statutorily ineligible for adjustment of status pursuant to section 245 of the Act, 8 U.S.C. § 1255 (1994), because he was inadmissible to the United States pursuant to section

---

[1] The Immigration Judge did not find the respondent deportable pursuant to a charge under section 241(a)(1)(A) of the Act, as an alien who was excludable at entry as a result of his conviction, inasmuch as the respondent had received a waiver of inadmissibility from the Department of State under section 212(d)(3)(A) of the Act, 8 U.S.C. § 1182(d)(3)(A) (1994). However, the respondent conceded deportability as a nonimmigrant who remained longer than permitted.

212(a)(2)(A)(i)(II) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(II) (1994), in light of his controlled substance violation in Great Britain.

We agree with the Immigration Judge's findings regarding the respondent's statutory eligibility for adjustment of status. However, we find that the Immigration Judge erred in denying the respondent's application for voluntary departure. Accordingly, we will dismiss the respondent's appeal from the Immigration Judge's denial of adjustment of status, but will sustain it with respect to the respondent's application for voluntary departure.

## I. ISSUE PRESENTED

The specific issue presented in this case is whether the expungement of the respondent's foreign drug-related conviction pursuant to a foreign rehabilitation statute is effective to prevent a finding of inadmissibility pursuant to section 212(a)(2)(A)(i)(II) of the Act where the respondent would have been eligible for federal first offender treatment had he been prosecuted in the United States.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a 34-year-old male native and citizen of Great Britain. He married his United States citizen wife in England on September 25, 1991. He entered the United States on July 19, 1992, as a nonimmigrant visitor for pleasure and remained longer than permitted. The respondent applied for adjustment of status based upon an immediate relative visa petition, submitted by his United States citizen wife, which was approved on January 19, 1995. In a decision dated September 14, 1993, the Immigration and Naturalization Service district director denied the application upon a finding that the respondent is inadmissible pursuant to section 212(a)(2)(A)(i)(II) of the Act. The respondent's excludability from the United States resulting from his 1984 conviction for possession of cocaine and marijuana in Great Britain is the sole basis for his ineligibility for adjustment of status.

According to the respondent, his conviction was nearly 13 years ago and was for possession of small amounts of marijuana and cocaine, he was a first offender and has led a life free of drugs and crime since then, and his conviction has been expunged pursuant to Great Britain's Rehabilitation of Offenders Act of 1974. Before the Immigration Judge, the respondent argued that the rationale applied by the United States Court of Appeals for the Ninth Circuit in *Garberding v. INS,* 30 F.3d 1187 (9th Cir. 1994), and by the Board of Immigration Appeals in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), should be extended to apply to foreign controlled substance convictions and their expungement pursuant to foreign rehabilitation statutes, as in the present case.

Prior to the Ninth Circuit's decision in *Garberding v. INS, supra*, the general rule was that expungement of a conviction for a controlled substance offense would not allow an alien to avoid deportation unless the conviction

was expunged under the Federal First Offender Act or a state counterpart thereof. In that case, however, the Ninth Circuit found it was wholly irrational, and thus violated an alien's equal protection rights, to base a deportation order on the fortuitous circumstance that a state statute under which an alien's drug conviction was expunged was not a state counterpart of the Federal First Offender Act, where the alien met the criteria for expungement under that Act. The Ninth Circuit stated that the focus should be on the alien's conduct, rather than the breadth of the state rehabilitative statute. *Id.* at 1191. This Board agreed with the Ninth Circuit's analysis and held in *Matter of Manrique, supra*, at 64, that "an alien who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of 18 U.S.C. § 3607(a) . . . had he been prosecuted under federal law."[2]

Based on both the evidence and arguments presented, the Immigration Judge first found that the respondent's conviction, even though subsequently expunged, was a conviction pursuant to *Matter of Ozkok,* 19 I&N Dec. 546 (BIA 1988). The Immigration Judge then considered whether or not the rationale set forth in *Garberding v. INS* and *Matter of Manrique* applied to the respondent's case. Applying the four-part test outlined in *Matter of Manrique,* the Immigration Judge found that the respondent had fulfilled only three of the four requirements needed to establish eligibility for federal first offender treatment and therefore was ineligible for relief. First, the respondent was a first offender, although rather than violating a state or federal law, he had violated the law of a foreign country. Second, according to the record, the respondent pled guilty to two counts of simple possession of a controlled substance.[3] Third, at that time the respondent had not previously been accorded first offender treatment under any law. However, the respondent's conviction and the action taken by the court occurred in a foreign country, not in one of the several states of the United States.[4] According to

---

[2] Aliens prosecuted under state law are now eligible for first offender treatment under *Matter of Manrique* if the following four criteria are met: (1) the alien is a first offender, i.e., he has not previously been convicted of violating any federal or state law relating to controlled substances; (2) the alien has pled to or been found guilty of the offense of simple possession of a controlled substance; (3) the alien has not previously been accorded first offender treatment under any law; and (4) the court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation. *Matter of Manrique, supra,* at 64.

[3] Possession of marijuana and cocaine constitutes "simple possession of a controlled substance" within the meaning of the Federal First Offender Act. *See generally United States v. Barial,* 31 F.3d 216 (4th Cir. 1994).

[4] The Immigration Judge noted that in the respondent's case, the court never entered an order, as required by the four-part test. However, the Immigration Judge agreed with the respondent's arguments that even though no actual order was entered, the benefit occurred automatically under English law and was a procedural phenomenon that was not significant in

the Immigration Judge, the respondent therefore failed to meet the fourth requirement under *Matter of Manrique*.

The Immigration Judge emphasized the fact that the Board's decision in *Matter of Manrique* referred only to action under state law, with no mention whatsoever of foreign convictions. He further noted that the impetus for *Matter of Manrique* and *Garberding v. INS* was the interest in maintaining a uniform and fair application of the laws throughout the states, not worldwide. In addition, the Immigration Judge reviewed the line of cases stating that foreign pardons and expungements are ineffective in obliterating a foreign conviction or removing the disabilities which result from such a conviction for immigration purposes. Even though these cases did not deal with the Federal First Offender Act and dealt with crimes involving moral turpitude rather than controlled substance violations, the Immigration Judge noted that they still lent support to his determination by analogy. In light of all of the above, as well as the fact that there was no waiver available for the respondent's offense, the Immigration Judge concluded that the respondent failed to demonstrate statutory eligibility for adjustment of status. The Immigration Judge also found the respondent ineligible for voluntary departure "due to the nature of his conviction" and thus entered an order of deportation.

On appeal, the respondent again argues in favor of applying to foreign convictions the policy concerns underlying the decisions in *Garberding v. INS* and *Matter of Manrique*. Thus, he contends that the Immigration Judge incorrectly found him inadmissible on the basis of his conviction and therefore ineligible for adjustment of status. In addition, he asserts that the Immigration Judge erroneously found him ineligible for voluntary departure and erred in failing to address the merits of his request for voluntary departure.

On the other hand, the Service adopts the reasoning and conclusions reached by the Immigration Judge regarding the respondent's eligibility for adjustment of status. However, the Service contends that the respondent is not statutorily ineligible for voluntary departure, but rather should be denied that relief in the exercise of discretion because of his drug conviction.

## III. EXAMINATION OF CURRENT TREATMENT OF FOREIGN PARDONS, AMNESTIES, AND EXPUNGEMENTS

The Immigration and Nationality Act explicitly provides a waiver of deportability for aliens convicted of crimes involving moral turpitude, as well as aggravated felonies, under section 241(a)(2)(A)(iv) of the Act, if the alien, subsequent to the conviction, has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several states. The question has arisen whether or not this provision applies to foreign pardons. Closely related to this issue is the effect of foreign amnesties

the case at hand. In view of our decision in this case, we need not address the propriety of that ruling.

and expungements on deportability. It has been held that the pardon provision of the Act applies only to pardons granted in the United States for crimes committed in this country after entry and that a foreign amnesty or pardon will therefore not render a foreign conviction ineffective for immigration purposes. *Mullen-Cofee v. INS*, 976 F.2d 1375 (11th Cir. 1992), *amended on rehearing*, 986 F.2d 1364 (11th Cir. 1993); *Marino v. INS*, 537 F.2d 686 (2d Cir. 1976); *Weedin v. Hempel*, 28 F.2d 603 (9th Cir. 1928); *Zgodda v. Holland*, 184 F. Supp. 847 (E.D. Pa. 1960); *Vidal Y Planas v. Landon*, 104 F.Supp. 384 (S.D. Cal. 1952); *Matter of B-*, 7 I&N Dec. 166 (BIA 1956); *Matter of F-yG-*, 4 I&N Dec. 717 (BIA 1952).[5]

In *Matter of G-*, 5 I&N Dec. 129 (BIA 1953), we addressed the question whether a crime "extinguished" under Italian law would support an order of deportation. Following judicial precedent, we concluded that the exculpating provisions of the statute relating to pardons did not apply to an expunged foreign conviction, "since the court decisions clearly limit pardons and other acts in the nature of a pardon exclusively to domestic convictions." *Id*. at 133. *See generally Zgodda v. Holland, supra.*

## IV.  EFFECT OF FOREIGN EXPUNGEMENT

In light of the above, we find that the expungement of the respondent's conviction is akin to a foreign pardon and is therefore ineffective for immigration purposes. We recognize that *Garberding v. INS, supra,* and *Matter of Manrique, supra*, have carved out a new exception for aliens who have been convicted of a controlled substance violation and accorded rehabilitative treatment under a state statute, and who would have been eligible for federal first offender treatment. However, we view this exception as one analogous to that regarding domestic pardons. In the past, we have not only declined to extend the provision of the Act relating to domestic pardons to foreign pardons, but we have also interpreted this provision to be ineffective in preventing the exclusion or deportation of aliens whose foreign convictions were expunged or subject to a foreign amnesty. Consequently, we will also take a narrow view of this new exception and limit its application to aliens meeting the strict four-part test outlined in *Matter of Manrique*.

Our interpretation of this new exception is consistent with that of the Ninth Circuit, which recently emphasized the limited nature of its holding in *Garberding v. INS.* In *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996), the court held that the Service's recognition of expunged drug-related and moral turpitude

---

[5] The majority of cases addressing this question arose in the context of crimes involving moral turpitude. One exception is *Mullen-Cofee v. INS, supra,* where the court held that a pardon for drug convictions, allegedly granted by the Canadian Governor in Counsel, did not alter the deportability determination for an alien charged with being deportable as a person convicted of a narcotics offense. Furthermore, in several of these cases, the interpretation arose under the Immigration and Nationality Act of 1917. However, the  policy expressed therein remains valid.

crimes and its refusal to give effect to expunged firearms offenses did not violate the alien's due process right of equal protection, as *Garberding v. INS* ruled only on the constitutionality of treating aliens differently on the basis of which state laws they violated. Consequently, we will dismiss the respondent's appeal with respect to the Immigration Judge's findings regarding the respondent's inadmissibility and statutory ineligibility for adjustment of status.

## V. VOLUNTARY DEPARTURE

On appeal, the respondent also challenges the Immigration Judge's denial of his application for voluntary departure. We conclude that the Immigration Judge erroneously found the respondent ineligible for voluntary departure "due to the nature of his conviction." The respondent established that he has been a person of good moral character for at least 5 years immediately preceding his application for voluntary departure, because his sole conviction occurred 13 years ago, prior to his entry into the United States. *See* sections 101(f)(3), 244(e)(1) of the Act, 8 U.S.C. §§ 1101(f)(3), 1254(e)(1) (1994). Furthermore, the conviction was not for an aggravated felony. *See* section 244(e)(2) of the Act. In light of the above, we find that the respondent is eligible for voluntary departure pursuant to section 244(e)(1) of the Act.

Finally, we reject the Service's argument on appeal that we should deny the respondent's application for voluntary departure in the exercise of discretion because of his drug conviction. Accordingly, the following orders will be entered.

**ORDER:** The appeal from the Immigration Judge's denial of adjustment of status is dismissed.

**ORDER:** The appeal from the Immigration Judge's denial of voluntary departure is sustained.

**FURTHER ORDER:** The outstanding order of deportation is withdrawn, and in lieu of an order of deportation, the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and, in the event of his failure to so depart, the order of deportation will be reinstated and executed.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

The majority decision, adversely affecting the spouse of a United States citizen who seeks to adjust his status to that of a lawful permanent resident of the United States, erroneously posits and resolves the issue before us. The majority's reasoning may be paraphrased as follows:

> The respondent's 1984 disposition under the (foreign) Rehabilitation Act of 1974 for his first and only offense, a 13-year-old controlled substance possession violation in Great Britain, is a *conviction* that has been *expunged*. While section 18 U.S.C. § 3607 (1994),

applicable to first and youthful offenders, constitutes an exception to the general rule that controlled substance convictions may not be expunged, a foreign expungement is in the nature of a foreign pardon and foreign pardons are not given effect for immigration purposes. Therefore, the instant foreign *expungement* does not alter the fact that the respondent is inadmissible and may not adjust his status.

Even were the factual basis for this syllogism correct, which, as I demonstrate below, it is not, the majority's reasoning is fatally flawed. Upon reviewing the record, the applicable federal statutes, and the relevant case law, I conclude that the respondent has established,

*first*, that he received a disposition for a minor criminal offense under a foreign rehabilitative statute;

*second*, that this rehabilitative statute is comparable to our federal statute, 18 U.S.C. § 3607(a) - (c), which governs two different forms of dispositions: those made in first offender situations which do *not* involve convictions, and those made in youthful offender cases referred to as convictions that are expunged; and, which includes an express mandate that in neither situation are such dispositions to be considered convictions "for any purpose;" and

*third*, that we have recognized the reach of this federal mandate as applicable generally to adjudications under the immigration laws, warranting that we extend such treatment to the respondent's situation.

Furthermore, it should be noted that we typically determine whether foreign dispositions constitute convictions by referring to their domestic counterparts and considering both statutory and constitutional factors; and that we recognize 18 U.S.C. § 3607 as an explicit statutory provision reflecting an overriding congressional intent that first-time and youthful drug offenders be exempt from the harsh penalties that attach to the direct and collateral consequences of such criminal conduct.

Although the majority accurately characterizes the respondent's appeal as urging us to conclude that *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995), extending for application nationwide the rationale and holding in *Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994), should govern our construction of this foreign disposition of a first-time controlled substance offense,[1] they mischaracterize both cases. The majority not only misconstrues the underlying interpretation on which the holding in *Matter of Manrique, supra*, is founded, but deviates from the express language on which we relied to reach that holding.[2] Cf. Matter of A-F-, 8 I&N Dec. 429 (BIA, A.G. 1959). In addition, the majority opinion incorrectly concludes that foreign dispositions are not to be treated according to a federal standard.

---

[1] These cases provide governing authority, which we are bound to follow in determining the instant appeal. *See* 8 C.F.R. § 3.1(g)(1997). The Board is bound to follow the law of the United States Court of Appeals for the Ninth Circuit, in which this case arises. *See Matter of K-S-*, 20 I&N Dec. 715, 719-20 (BIA 1993); *Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989); *see also NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987).

[2] I find it important to note that the respondent raised his legal arguments that *Matter of Manrique* and *Garberding v. INS, supra,* controlled or should control the disposition in his

*Cf. Garberding v. INS, supra; see also Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of Ramirez-Rivero*, 18 I&N Dec. 135 (BIA 1981); *Matter of Adamo*, 16 I&N Dec. 590 (BIA 1964).

## I.  SECTION 3607 OF TITLE 18 OF THE UNITED STATES CODE

### A.  Effect of 18 U.S.C. § 3607

Disposition of a criminal charge under 18 U.S.C. § 3607 may take one of two forms. The first, involving pre-judgment rehabilitative treatment under § 3607(a), is limited to the case of a first time offender. Such a disposition *does not constitute a judgment of conviction.*

Another, second type of disposition of a criminal charge under § 3607(c) involves a judgment of conviction in the case of a youthful offender that is entered and expunged. The effect of such treatment removes the disposition from "all official records," and *need not be acknowledged as a conviction.* Even the fact of the youthful offender's arrest or the institution of criminal proceedings need not be disclosed, as subsection (c) protects the individual from subsequent disclosure without penalty for perjury, false swearing, or making a false statement. *Id.*

The statute provides explicitly, using plain language to convey congressional intent, that under either § 3607(a) or § 3607(c):

> A *disposition under subsection (a)*, or a *conviction* that is the subject of an *expungement* order under subsection (c), *shall not be considered a conviction* for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, *or for any other purpose.*

18 U.S.C. § 3607(b) (emphasis added).[3]

We have made clear, repeatedly and appropriately, that reference to a uniform and consistent federal standard is effective, desirable, and fair in immigration matters. *See, e.g., Matter of L-G-, supra; Matter of Manrique, supra* (relying on *Garberding v. INS, supra); Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). The language of 18 U.S.C. § 3607(b) mandates that a disposition reached under its terms is *not* a conviction.[4]

---

case, not only below, in proceedings before the Immigration Judge in two written pre-hearing arguments, but on appeal, in his Notice of Appeal and in a brief submitted by his counsel. Even if the respondent had not raised them independently, these issues are ones appropriate for an appellate administrative Board to address and resolve; yet, the majority has not meaningfully addressed them.

[3] *See also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989) ("whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) (holding that a construction of the statutory language which takes into account the design of the statute as a whole is preferred).

[4] The amendment to the statutory definition of "conviction" made by section 322(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L.

It is entirely consistent to have extended these provisions beyond traditional federal prosecutions to cases involving the characterization of such criminal dispositions in other contexts, such as for purposes of the immigration laws as we have done in *Matter of Manrique, supra. See United States v. Barial,* 31 F.3d 216, 217-18 (4th Cir. 1994)(holding that a controlled substance violation within the jurisdiction of the United States Park Police is amenable to a disposition under § 3607(a), which accommodates a broad reading of those offenses subject to its terms). This means that, according to a controlling federal standard, neither a "disposition" in the case of a first time offender, nor a "conviction" in the case of a youthful offender, may be treated as a "conviction" in the context of immigration proceedings.

## B.  Recent Statutory Amendments to the INA

Some dispositions under 18 U.S.C. § 3607 are expressly deemed not to be convictions. This is so in the case of an individual whose criminal charge is treated under a rehabilitative, pre-judgment disposition for a first offense involving controlled substances. *See* 8 U.S.C. § 3607(a). Neither this section of the federal statute, nor the rulings in *Garberding v. INS, supra,* and *Matter of Manrique, supra*, interpreting it, are affected by statutory enactments to the Immigration and Nationality Act following their issuance. Although neither party has been given an opportunity to brief this question, it cannot be avoided in addressing the majority opinion in this case.[5]

Although recent amendments dramatically changed many provisions of the Act and their application, none of these amendments materially affect the applicable precedent or the necessary result in the instant case. In particular, Congress' express amendment of the administrative definition of a "conviction" is inapposite. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 322(a)(1), 110 Stat. 3009-546, 3009-628 ("IIRIRA") (codified at 8 U.S.C. § 1101(a)(48)(A)); *see also* Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No. 104-2202, § 322, *available in* 1996 WL 563320 *and* 42 Cong. Rec. H10,841-02 ("Joint Explanatory Statement"); *supra* note 4.

That amendment effectively deleted the "third prong" of a test introduced by *Matter of Ozkok, supra*, which required that before a noncitizen could be found to have been "convicted," under a "deferred adjudication" statute, the statute governing pre-judgment dispositions must have foreclosed any further determination of the defendant's guilt or innocence. This requirement

No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA"), does not disturb either our commitment to a uniform federal standard or our construction of § 3607. *See* discussion *infra* Part I.B.

[5] The majority never reaches this question because they apparently fail even to recognize or acknowledge that a proper application of these cases may require consideration of recent changes in the law.

previously was imposed *in addition* to the need for a showing that the noncitizen defendant had admitted guilt or sufficient facts on which a judgment of guilt could be entered, or had pled nolo contendere, and that the court had imposed some restriction on the noncitizen defendant's liberty (including any restriction, from restitution or community service to probation or service of a jail sentence). Section 101(a)(48)(A) of the Act, as incorporated by the IIRIRA, definitively excised the "third prong."[6]

Section 3607 of 18 U.S.C. does not include and never has included such a factor, and is unaffected by section 101(a)(48) of the Act, as guilt is determined at the outset. It is the question of the characterization of judgment being withheld or expunged that is and always has been paramount. Moreover, neither *Garberding v. INS, supra,* nor *Matter of Manrique, supra*, were dependent in any way on the third prong of *Matter of Ozkok, supra*, for their rationale, or for the result reached in those cases.[7] Instead, those cases followed an independent federal standard mandated by Congress, that held and continues to hold that neither a first offender disposition nor a youthful offender expungement is to be treated as a conviction for *any* purpose. *See* 18 U.S.C. § 3607(b). Consequently, the change in the definition of "conviction" is plainly inapposite to the controlling law which governs the instant case.[8]

## II.  THE TEXT AND THE THRUST OF MATTER OF MANRIQUE

Historically, the Attorney General has interpreted congressional intent to call for harsh treatment of convicted noncitizen drug offenders. Consequently, in *Matter of A-F-, supra*, the Attorney General ruled that an after-the-fact state expungement of a drug conviction need not be honored and that such a conviction would continue to form a ground for deportation. Section 3607, however, is a congressionally mandated *exception* superseding any other federal definition of a "conviction," based on a realistic appraisal of the breadth of drug abuse and the need to acknowledge the rehabilitative possibilities in the case of first-time and youthful offenders. It reflects a contrary intent on the part of Congress, which creates an exception for first-time and youthful drug offenders and overrides other expressions of legislative intent to harshly punish such conduct.

---

[6] The Joint Explanatory Statement prepared by the Committee of Conference specifically explains that the purpose of this excision was to do away with the vagaries of differing forms of amelioration of convictions found in state provisions, and was intended to overrule *Ozkok's* "third prong."

[7] Neither of these decisions had anything to do with whether a violation of the terms of an initial disposition triggered a defendant's right to a full trial pertaining to his guilt or innocence of the underlying charges of criminal conduct.

[8] It is noteworthy that in its Joint Explanatory Statement, Congress took great care to identify and refer specifically to individual Board precedent rulings that they intended to overrule expressly by amendments made in the IIRIRA.  By contrast, nowhere in the statutory text or in the Joint Explanatory Statement does Congress mention either *Matter of Manrique, supra,* or our construction of 18 U.S.C. § 3607 pursuant to *Garberding v. INS, supra.*

*Matter of Manrique, supra*, makes clear that, despite imprecise and inexact references previously relied on by the Board and the Immigration and Naturalization Service, we now recognize that a disposition under 18 U.S.C. § 3607(a) is *not* a conviction. *Matter of Manrique, supra*, at 62 n.7. While some confusion may have been created as the result of the statutory subsections contained in § 3607, one of which refers to "expunged" convictions, *see, e.g.,* § 3607(c), the fact of the nonexistence of a conviction under 18 U.S.C. 3607(b), and the fact of an expungement of a conviction, generally speaking, are distinct and are not to be confused. *Id.*

In *Matter of Manrique*, we recognized that *Matter of A-F-, supra*, stands for the proposition that a drug offender's *expunged* conviction is not to be excused for immigration purposes. *See also Garberding v. INS, supra*, at 445-46, (acknowledging that a drug offender cannot escape deportation by a technical erasure of his conviction). We acknowledged that, in the cases of youthful offenders, there is a rational basis for an exception to the rule under the former Federal Youth Correction Act ("FYCA") (now codified as 18 U.S.C. 3607(c)), which the federal courts found to be equally as compelling as Congress' concern that drug offenders be deported. *See Mestre Morera v. INS*, 462 F.2d 1030 (1st Cir. 1972); *see also Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974). We also recognized that "when a similar issue arose regarding . . . first offender treatment," the Service opined that the first offender provisions were for first offenders what the youthful corrections provisions were for minors. *Matter of Manrique, supra*, at 62; *see also Matter of Andrade, supra*. We adopted that reasoning.

More importantly, we addressed § 3607(a) specifically and stated as follows:

> Although both the Service and the Board referred to the procedure followed under the first offender statutes in these cases as "expungement" of a "conviction," we subsequently concluded in *Matter of Seda*, 17 I&N Dec. 550 (BIA 1980), *overruled in part, Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), that a person sentenced under a statute providing for withholding of adjudication and discharge without conviction upon completion of probation was not "*convicted*" for immigration purposes under the standard for conviction then in effect. However, we revised that standard in *Matter of Ozkok, supra*, and would now consider a person "convicted" under the statutes in those cases, *but for the policy of leniency toward first offenders.*

*Matter of Manrique, supra*, at 62 n.7 (emphasis added).

There can be no question that we have distinguished convictions that have been expunged, from dispositions in the cases of first offenders that never have become convictions. *Matter of Manrique, supra*, and § 3067 expressly differentiate these dispositions.[9] This distinction becomes critical when

---

[9] The majority erroneously cites to *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996). With all due respect, that decision also misreads *Matter of Manrique, supra*, and 18 U.S.C. § 3607, as addressing only expunged convictions, rather than addressing all dispositions expressly falling

viewed in relation to how we construe a foreign disposition. The majority readily mixes and mingles the question of state law with the question of whether a disposition in any jurisdiction is or is not a conviction. Such imprecise and inexact reasoning is unacceptable generally, and even more particularly, when an individual's exclusion and expulsion from the United States, precluding him from a life as a lawful permanent resident with his United States citizen spouse, is the bottom line.

## III. GARBERDING V. INS AND APPLICABILITY TO FOREIGN DISPOSITIONS

Ultimately, the majority rests its conclusions on the fact that the disposition involved in this case relates to a disposition obtained abroad. It is true that *Matter of Manrique, supra*, relied upon circumstances involving a disposition under state law. That may be the case. Does that mean that our construction of the principle that we should construe what constitutes a conviction by reference to federal law requires dismissing this appeal? Of course not. Such a conclusion is contrary to law and to fairness.

The way in which we treat foreign dispositions, be they "convictions" or determinations falling short of what we consider to be convictions for immigration purposes, is not a new question for the Board. We have held, and the courts have endorsed, that it is appropriate for us to recognize the determinations of independent sovereigns regarding criminal offenses, as long as such conduct would constitute a criminal offense in the United States. *See, e.g., Chiaramonte v. INS*, 626 F.2d 1093 (2d Cir. 1980); *Lennon v. INS,* 527 F.2d 187 (2d Cir. 1975); *Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978).

It is not hard to imagine why we adopted this approach. We have set standards, which govern and define the type of conduct and behavior that we find acceptable and will tolerate in our society, and that which we find undesirable and unlawful. In determining the admissibility and deportability of noncitizens in our country, it is reasonable that we hold such persons to the same—or similar—standards as we hold lawful residents and citizens of this country. We have never, however, elevated beyond the standards of conduct that we impose on our own residents and citizens, the standards of conduct to which we expect noncitizen applicants to conform.

In particular, we have held that foreign juvenile offenses that would be considered to be juvenile delinquency offenses had they occurred in the United States are *not* considered crimes and do *not* constitute convictions triggering exclusion from this country. *See Matter of Ramirez-Rivero, supra*.

---

short of a conviction or those not constituting convictions as a matter of law. This type of "acquiescence" is questionable, particularly because when we wrote *Matter of Manrique, supra*, we were well aware of the actual scope of § 3607. We explicitly acknowledged our own previously inexact semantic references and the resulting confusion created regarding the distinctions between "convictions" and "expungements of convictions."

There we held that in order for a foreign conviction to serve as a basis for a finding of inadmissibility, the conviction must be for conduct deemed criminal by United States' standards. *Id*. at 137. In that case, looking to a federal standard under which Congress "*manifested its view* as to conduct constituting acts of juvenile delinquency with the enactment of the Federal Juvenile Delinquency Act," we found that the "offense is not a crime within the contemplation of the Immigration and Nationality Act." *Id*. (emphasis added); *see also Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981).

In addition, in characterizing an offense resulting in a foreign conviction as a "conviction" incurring deportability, as opposed to a "conviction" amounting to a "petty offense," we have held that, in defining the crime, recourse is to be had to the offense's United States counterpart, either under Title 18 of the United States Code or Title 22 of the D.C. Code. *Matter of Adamo, supra*, at 595 (holding that determination whether a foreign conviction constitutes a "petty offense" not incurring excludability depends on its equivalency either to comparable provisions in the United States or the District of Columbia Code).

Similarly, for a foreign "conviction" to serve as a basis of inadmissibility, the conviction must be a *conviction* under United States standards. *Lennon v. INS, supra*. Again, we look to United States law for that determination. In so doing, we find, as we did in *Matter of Ramirez-Rivero, supra*, that Congress has "manifested its view" that a disposition in the case of a first time offender who is discharged from a disposition under § 3607(a) following satisfactory completion of pre-judgment rehabilitation does not constitute a conviction.

## A. Dissimilarity Between a Rehabilitative Statute and a Pardon

It should be undisputed that the fact of a conviction and what constitutes an expungement of a conviction are different animals, relying on distinct circumstances. Neither is an expungement the same as or even similar to a pardon, except, perhaps in some aspects, in effect.

While functionally, a pardon and an expungement may obviate the consequences of a conviction, the source of authority for each is dramatically different. Although there have been cases of legislative pardons, for immigration purposes, one comes from the executive. The other comes from the legislature. One relies on the exercise of discretion by a head of Federal or state government within the United States and occurs as the result of the personal exercise of sovereign authority, extended on a case-by-case basis. The other is derived from generic legislative action and relies only on a general grant of authority from the legislative branch to administrative officers within the executive branch or to the judiciary.

It is reasonable to limit the exercise of the pardon authority to the executive under United States law. While we might have opted to extend such recognition to the determinations of foreign heads of state on the basis of

international comity, we have not expressly done so. It is not unreasonable to have concluded that to recognize foreign pardons could undermine our sovereignty by accepting the determinations of foreign heads of state without express congressional authorization in either statutory or treaty form.

Dispositions under foreign rehabilitative statutes do not contain such cause for concern. These statutes may be considered and evaluated as to their applicability in the context of immigration determinations without compromising the power of the executive or otherwise possibly treading on considerations of sovereignty. Rather, determinations that foreign laws are comparable to or consistent with federal law enhances the United States' power and authority on the federal level. Extending the rationale of our federal law to foreign provisions to achieve a consistent application of federal standards in the administration of the immigration laws is not all that different from engaging in the same endeavor with regard to state law. In each case, we are seeking to impose a uniform standard governed by our own federal law.

## B. Dissimilarity Between a Rehabilitative Statute Similar to 18 U.S.C. § 3607 and Expungement

As described above, a rehabilitative statute that does not involve a conviction is not akin to a provision for a pardon following a conviction, which may, for our purposes, only be authorized by the sovereign. In addition, an *expungement* provision is not akin to a pardon provision for similar reasons.

In the case of an expungement, it is the legislative branch which has determined to allow an ameliorative mechanism concerned with post-conviction conduct to overcome and even obviate the fact that a conviction has previously been entered. Again, such provisions do not rely on a specific executive determination relevant to an individual case. Rather, such determinations are founded on the notion that post-conviction conduct may warrant the erasure of a conviction for certain specified purposes. *See, e.g., Matter of Luviano*, 21 I&N Dec. 235 (BIA 1996).

As I have clarified, 18 U.S.C. § 3607 contains two independently operative provisions—(a) and (c). The former provision is a pre-judgment disposition and does not involve a conviction, and the latter provision appears to involve an expungement of a record of conviction. Neither may be treated as a conviction for any purpose. 18 U.S.C. 3607(b). Therefore, § 3607 is not, by any stretch of the imagination, a typical expungement provision. Congress specifically mandated to the contrary.

Simple logic also leads to the conclusion that dispositions under 18 U.S.C. § 3607 are not "expungements," since a *conviction* must preexist an "expungement" in order for such ameliorative action to have anything to expunge. *See, e.g.*, § 3607(a). It is stated unequivocally in § 3607 that the dispositions contained in its subsections shall not be treated as a conviction for any purpose. 18 U.S.C. § 3607(b). It therefore is wholly improper and

inappropriate to refer to dispositions under § 3607 as "convictions" which have been "expunged."

Even were we to interpret the change in section 101(a)(48)(A) of the Act as affecting those dispositions which might otherwise be construed as expunged convictions, this would not alter the way in which we are bound to construe dispositions under § 3607 or its counterparts, as established in *Garberding v. INS, supra,* and *Matter of Manrique, supra.* There, Congress has expressly mandated that such dispositions are not to be treated as convictions "for any purpose," and no subsequent legislation has reinterpreted or changed this reading. *See supra* n.4. A foreign rehabilitative statute, therefore, is similar to neither a domestic pardon nor a domestic expungement.

## C. Treatment in This Case Results in No Entry of Conviction

Even if treatment under 18 U.S.C. § 3607, in part, is similar to expungement because that term is used in § 3607(c), it would not be applicable to the case before us, because, as stated above, the respondent does not claim to be similarly situated to a youthful offender whose disposition is considered in § 3607(c). Instead, he claims to be similarly situated to a first offender whose disposition is covered under § 3607(a). That subsection addresses pre-judgment probation following entry of a guilty plea. *Id.* As I have emphasized, this not a conviction as defined by the specific language of § 3607(a), no matter how we eventually may interpret section 101(a)(48)(A) of the Act, as it is not a conviction under any circumstances by virtue of the express mandate of Congress contained in § 3607(b).

This case requires us to determine whether a conviction exists in the first instance. It is much more amenable to the analysis adopted and the approach taken in *Matter of Ramirez-Rivero, supra,* and *Matter of Adamo, supra*, than it is to a comparison with the treatment of foreign expungements, which, in turn, the majority deems to resemble foreign pardons. The former cases involved our consideration of foreign convictions, which, had they occurred in the United States would have been construed as juvenile or petty offenses, not amounting to convictions for purposes of inadmissibility. There, we were not afraid to look at the actual foreign provisions directly and to assess them in relation to United States law.

In determining which aliens to admit and which to exclude, it makes sense to treat foreign dispositions as though they addressed offenses committed here. Ultimately, it furthers and does not undermine our sovereignty and the sovereign control of Congress over migration to this country. It advances domestic interests while recognizing that applicants for admission to the United States arrive from afar where other systems of law control. And, it promotes consistent and uniform application of the laws according to our own federal standards.

In fact, although the majority utterly fails to address the case before us in this context, this was the approach taken by the Immigration Judge, and I believe it was a proper one. Moreover, the Immigration Judge found that the respondent was deserving of a favorable exercise of discretion.

Were it not for his conclusion that the respondent did not satisfy prong four of the *Manrique* test referring to *state* statutes, the Immigration Judge would have granted adjustment of status allowing the respondent to become a lawful permanent resident. Although the Immigration Judge found correctly that the decision of *Garberding v. INS, supra*, was controlling and held that even a similar statute containing provisions more broad than those articulated in 18 U.S.C. § 3607 should be treated as a counterpart to § 3607, he found that our decision in *Matter of Manrique, supra*, limited the extension of treatment comparable to that afforded under the *federal* statute to "action under *state* law." (Emphasis added.)

*Garberding v. INS, supra*, at 1190, in no way limits application of the principle which it establishes to *state* statutes that are analogues to the federal statute. *Garberding* instead emphasizes consideration of the alien's *conduct* as opposed to the particular wording of a state statute. *Garberding* relies upon an equal protection analysis under the United States Constitution and holds that the subsequent construction of a prior disposition of criminal conduct, and the resulting treatment of the individual in immigration proceedings, should be based on the *conduct, not* the *provision* under which such conduct was adjudicated.

Equal protection considerations apply to all "persons" seeking redress under our laws: noncitizens as well as citizens. Such a distinction should be no less relevant with regard to whether the law in question is a state law or a foreign law analogue of 18 U.S.C. § 3607. Neither the Immigration Judge nor the Board majority recognized, acknowledged or considered, as I discuss above, the fact that we have long considered foreign dispositions by looking to their federal analogues. Astonishing though it may be, the Board never even addressed this analysis, which was raised not only by the Immigration Judge, but also by the respondent. Instead, the majority went off on its own tangent pertaining to foreign expungements and pardons.

The case before us is not an expungement case. It is a case involving whether a conviction exists. That determination turns on whether we recognize foreign rehabilitative statutes, as we would similar state statutes, as analogues of 18 U.S.C. § 3607(a). For the reasons I have addressed above, I believe that such recognition is appropriate. I cannot join in the majority opinion as I find it erroneous, and I doubt that such an opinion, involving a question of law which the circuit will review de novo, can be upheld. Consequently, I dissent.